**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JABRIL IVY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-4549** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**BEETLESTONE, J.** **NOVEMBER 23 , 2026**

Plaintiff Jabril Ivy, who is currently incarcerated at SCI Smithfield, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights arising from a 2018 arrest and state court prosecution. (ECF No. 9.) Upon statutory screening of Ivy's Complaint, the Court granted him leave to proceed *in forma pauperis*, dismissed Defendants Sarah Gordon and the Philadelphia Police Department ("PPD"), and directed service of the Complaint on the City of Philadelphia ("the City"), Commissioner Danielle Outlaw, Officer Matthew Lally, Officer James McCullough, and Officer Pavel Reznick.[1] (ECF No. 12.) Currently before the Court is a Motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by the City, Lally, and McCullough (collectively "Moving Defendants"), seeking dismissal of most of the claims in Ivy's Complaint. (ECF No. 20.) Ivy has filed a Response. (ECF No. 25.)

---

[1] All Defendants are sued in their individual capacities only. (Compl. at 2.) The United States Marshal Service ("USMS") has been unable to serve Defendants Outlaw and Reznick. Ivy also sued several police officers identified only as John Doe. The Court advised Ivy that he must provide identifying information for these "Doe" officers so that the USMS can serve them. (ECF No. 10 at 3.) To date, he has not done so.

The Moving Defendants have filed a Reply (ECF No. 26) and Ivy filed a Surreply (ECF No. 27).[2] For the following reasons, the Motion will be granted in part and denied in part.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[3]

Ivy's Complaint arises from his February 23, 2018 arrest in Philadelphia, subsequent prosecution, and the eventual reversal of his guilty plea in December 2023 following a successful Post-Conviction Relief Act ("PCRA") petition. On the night of Ivy's arrest, PPD Officers Matthew Lally and James McCullough conducted a traffic stop of Ivy's vehicle and then searched the vehicle. (Compl. ¶¶ 18-29.) Lally handcuffed Ivy and while placing him in the police cruiser allegedly "started punching [Ivy] in the face . . . fell on top of [Ivy] and continue[d] punching [him] [while Ivy was] unable to protect him[self]." (*Id.* ¶ 30.) Ivy alleges that McCullough "witness[ed] the whole encounter" but failed to stop Lally from attacking Ivy, and instead told Lally, "hurry up, I radio['ed] backup" and handed Lally "an unknown package." (*Id.* ¶ 31.) Lally then pulled down Ivy's pants and Ivy started screaming for help. (*Id.*) Lally told him, "I told you I was going to get you" in reference to a prior traffic stop, then planted "unknown substances" on Ivy. (*Id.* ¶ 32.)

Back up arrived and Lally started punching Ivy "non-stop" causing him to become dizzy, as the backup officers watched and did not intervene. (*Id.* ¶¶ 33-34.) Lally then "hit [Ivy] in the

---

[2] Ivy's surreply appears to be identical to his Response in Opposition.

[3] The factual allegations set forth in this Memorandum are taken from Ivy's Complaint (ECF No. 9). Although not relied on by the Court, the Moving Defendants provide additional public records to bolster their Motion, including hearing transcripts and court orders from Ivy's underlying state court prosecution. (*See* ECF Nos. 20-1, 20-2, 20-3.) The Court adopts the pagination supplied by the CM/ECF docketing system to all cited documents. Where appropriate, grammar, spelling, and punctuation errors in Ivy's pleadings will be corrected for clarity.

head with a closed fist, knocking [him] out cold." (*Id.* ¶ 35.) Defendants John Doe and his partner then came forward and helped Defendant Lally retrieve the drugs Lally had planted on Ivy earlier. (*Id.* ¶ 36.) Ivy was locked in the police cruiser while the officers radioed for a wagon. (*Id.* ¶ 37.) Defendant Pavel Reznick and his partner arrived on the scene. (*Id.* ¶ 38.) Defendants Lally and McCullough, with help from two John Doe officers and Officer Reznick, carried Ivy and loaded him into the wagon, which transported Ivy to a local hospital for treatment of a head injury. (*Id.* ¶¶ 39-42.) Ivy was later discharged with injuries including a concussion; multiple contusions to the face, head, and chest; a fractured wrist; and permanent brain damage. (*Id.* ¶ 43.) Ivy was then taken to the 15th District police station for processing. (*Id.* ¶ 44.) He was subsequently charged with Possession with Intent to Deliver and Knowing and Intentional Possession of Controlled Substances in *Commonwealth v. Ivy*, CP-51-CR-0003017-2018 (C.P. Phila.). (*Id.* ¶ 45.) He was also charged with aggravated assault, simple assault, recklessly endangering another person, and terroristic threats in *Commonwealth v. Ivy*, CP-51-CR-0003018-2018 (C.P. Phila.) (*Id.*) Ivy hired Robert Gamburg as his attorney. (*Id.* ¶ 48.) After pre-trial proceedings, Ivy's trial was scheduled for March 25, 2019. (*Id.* ¶¶ 47-51.)

On March 19, 2019, Ivy tendered an open guilty plea to all charges, and presiding judge Frank Palumbo accepted Ivy's plea as knowing, intentional, and voluntary. (*Id.* ¶ 52.) However, at Ivy's sentencing hearing on May 2, 2019, Gamburg made a motion to withdraw Ivy's prior guilty plea, and advised the court that Ivy was not competent to proceed with sentencing. (*Id.* ¶ 54.) The court deferred the sentencing and ordered a mental competency evaluation and the preparation of presentence investigative reports. (*Id.*) On July 16, 2019, the sentencing hearing occurred. (*Id.* ¶ 55.) Gamburg and Palumbo got into a "heated dialogue" during which Palumbo offered to recuse himself from the case, and "trial counsel took Judge Palumbo up on his offer."

(*Id.*) The case was reassigned to Judge Anne Marie Coyle. (*Id.*) On November 8, 2019, after completion of the mental health evaluation and presentence investigation, Judge Coyle denied Ivy's motion to withdraw his guilty plea, then sentenced him to an aggregate sentence of 5 to 10 years followed by five years of reporting probation and other conditions. (*Id.* ¶¶ 56-57.) On November 18, 2019, Ivy filed a post-sentence motion seeking reconsideration of Judge Coyle's denial of the motion to withdraw. (*Id.* ¶ 58.) On November 22, 2019, the court denied the motion. (*Id.* ¶ 59.) On June 7, 2021, the Superior Court affirmed the judgment of sentence. (*Id.* ¶ 60.)

On June 13, 2022, Ivy filed a PCRA petition. (*Id.* ¶ 61.) Ivy hired investigator Todd Mosser to assist with preparation of his petition. (*Id.* ¶ 62.) Mosser interviewed Jose Santos, who was a witness to Ivy's February 23, 2018 arrest, and learned that Santos's account of the incident was "significantly different" from the factual account that formed the basis of the trial court's rulings. (*Id.* ¶¶ 63-65.) Ivy states that according to the police report: (1) Ivy had a container of what appeared to be illegal drugs hanging out of his sweatshirt pocket; (2) Ivy was not placed in handcuffs when taken outside of his vehicle; (3) Ivy attacked Defendant Lally unprovoked; (4) Ivy attempted to ingest the drugs in his possession so that the officers could not recover them; (5) Lally only punched Ivy in the face in an attempt to stop him from ingesting the drugs; (6) Ivy smashed his own head into the patrol car, and later threw himself into the door of an emergency patrol wagon, knocking himself unconscious. (*Id.* ¶¶ 68-79.) Ivy alleges that Santos' affidavit contradicted this account, indicating that he witnessed Ivy being placed in

handcuffs in the patrol car and that he was later repeatedly punched by Officer Lally while in the car.[4] (*Id.* ¶¶ 85-86.)

Ivy asserts that "after the incident, a complaint was filed against Defendant Lally and McCullough" with the PPD Internal Affairs Bureau, alleging that the officers used excessive force in the February 23, 2018 arrest. (*Id.* ¶ 82.) He states that the investigation ultimately "found multiple violation[s]" of PPD directives in the course of the February 23 interaction. (*Id.*) Ivy also received misconduct disclosures documenting past instances in which Defendant Lally illegally searched an individual's home and Defendant Reznick was found to have engaged in unspecified misconduct. (*Id.* ¶¶ 83-84.) The prosecutor in Ivy's case did not make these disclosures to Ivy prior to his guilty plea, and Ivy asserts that he could not have discovered them otherwise. (*Id.* ¶ 101.) Ivy contends that earlier disclosure of these materials would have permitted him to impeach Lally and discredit the prosecution's version of events, and claims he would have chosen to go to trial rather than plead guilty. (*Id.* ¶¶ 102-04.) He states that Commissioner Outlaw "signed off on [Ivy's] complaint and internal affairs' completion of [its] investigation." (*Id.* ¶ 118.)

Ivy asserts that "Defendant[[5]] has a pattern of violating policy and custom and [has] been sanction[ed] and continues to commit further violation[s]." (*Id.* ¶ 123.) He alleges that the

---

[4] It is not entirely clear from Ivy's pleading which facts he disputes from this recitation. He states that, "the relevant facts are surmised/false from the facts recited by the assigned prosecutor Defendant Sarah Gordon . . . [a]s well as Jose Santos' signed affidavit, and the Philadelphia Police Department misconduct report." (Compl. ¶ 68.) He appears to challenge the officers' account but does not distinguish between those facts and the facts averred in the Santos affidavit.

[5] It is unclear to whom Ivy is referring here, but the Court infers that he means Defendant Lally.

City's "lack of supervision and not training defendant Lally and Defendant McCullough . . . led to [Ivy's] assault." (*Id.*) He states that in attacking Ivy during the February 23 arrest, "Lally made a conscious decision breaking the Philadelphia Police Department [directives]." (*Id.* ¶ 124.) Because of Lally and McCullough's false statements in the police report and in pretrial hearings, Ivy alleges he was wrongly held in custody for 1,825 days before his guilty plea and judgment of sentence were ultimately vacated on December 4, 2023, at which point the judge ordered a new trial. (*Id.* ¶¶ 127, 133.) The Commonwealth moved to *nolle prosse* all charges and the cases were dismissed. (*Id.* ¶ 134.)

Based on the above allegations, Ivy asserts the following claims: (1) Deliberate Deception under the Fourth and Fourteenth Amendments against all Defendants; (2) Fabrication of Evidence under the Fourth and Fourteenth Amendments against Defendants Lally, McCullough, the City, and PPD; (3) *Brady*[6] violations under the Fourth and Fourteenth Amendments against all Defendants; (4) Malicious Prosecution against all Defendants; (5) Malicious Abuse of Process against all Defendants; (6) False Arrest/False Imprisonment against all Defendants; (7) Assault and Battery against Defendant Lally under state law and the Eighth Amendment; (8) Eighth Amendment Failure to Intervene against Defendant McCullough, and two John Does; (9) Negligence against all Defendants under state law and the Eighth Amendment; (10) Intentional Infliction of Emotional Distress ("IIED") against all Defendants predicated on distress Ivy suffered from the "physical abuse" he sustained; and (11) Municipal Liability against all Defendants. (*Id.* at 9-12.)

## II. STANDARD OF REVIEW

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented"). At the pleading stage, a court may dismiss claims based on an affirmative defense if the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a

plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Notably, the Court may, on its own authority, dismiss implausible claims or claims precluded by immunity filed by a litigant who is proceeding on an *in forma pauperis* basis. *See* 28 U.S.C. § 1915(e)(2)(B); *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim.").

## III. DISCUSSION

The Moving Defendants argue that the vast majority of Ivy's claims should be dismissed. As discussed below, the Court largely agrees.[7] Because Ivy's brief Response in Opposition and

[7] Further, Ivy brings many of his claims against "All Defendants." (*See* Compl. at 9-12.) As discussed further below, Ivy does not plead facts reflecting the personal involvement of all Defendants in several of his claims. Because "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable, *Rode*, 845 F.2d at 1207, the Court dismisses several claims on that basis.

duplicative Surreply do not meaningfully address any of the legal or factual arguments presented by the Moving Defendants, the Court does not discuss Ivy's briefing in any detail.[8]

### A. Claims Subject to Governmental Immunity

The Moving Defendants ask the Court to dismiss all state law claims against the City based on immunity under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541-50 ("PSTCA"). They also seek to dismiss the negligence claims against Lally and McCullough on the same grounds. The PSTCA provides that a local agency is exempted from "liabil[ity] for any damages on account of any injury to a person or property caused by the act of the local agency or an employee thereof." 42 Pa. Cons. Stat. § 8541. The PSTCA effectively bars all negligence actions against counties and their employees, unless brought under one of nine enumerated statutory exceptions.[9] As to intentional torts, "[a]lthough municipal employees themselves can be held liable for acts of 'crime, actual fraud, actual malice or willful misconduct," [notwithstanding the PSTCA], the City 'cannot be liable for an injury caused by the criminal, fraudulent, malicious, or willful/intentional misconduct of the employee."[10]

---

[8] The only substantive response Ivy makes to the Moving Defendants' arguments is to assert that, "a pro se litigant is not held to the [same] standards as an attorney" and that "[t]he Federal Court in civil matters tends to be flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings." (ECF No. 25 at 1.) While "*pro se* plaintiffs are not held to as high of a standard as litigants that are represented by counsel, a *pro se* plaintiff must still plead the essential elements of his or her claim and is not excused from conforming to the standard rules of civil procedure." *Gagliardi v. Fisher*, 513 F. Supp. 2d 457, 470 (W.D. Pa. 2007) (citations omitted).

[9] The exceptions to immunity are: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, (8) care, custody or control of animals, and (9) sexual abuse. *See* 42 Pa. Const. Stat. § 8542(b). There are no facts in the Complaint suggesting that any of these exceptions apply to Ivy's case.

[10] In the context of immunity under the PSTCA, willful misconduct has the same meaning as "intentional tort." *See E. Rockhill Twp. v. Richard E. Pierson Materials Corp.*, 386 F. Supp.

*Gallashaw v. City of Philadelphia*, 774 F. Supp. 2d 713, 719 (E.D. Pa. 2011) (quoting *Hardy v. Big Beaver Falls Sch. Dist.*, 9 Pa. D. & C. 5th 482, 485 (Pa. C. P. 2009)); *see also Simpson v. Philadelphia Sheriff's Off.*, 351 F. Supp. 3d 919, 926 (E.D. Pa. 2019) (noting that "although there is a statutory abrogation of immunity as to individual employees for certain intentional tort claims against them under the PSTCA, there is no analogous provision as to local agencies") (footnote omitted). Thus, Ivy's negligence, IIED, and assault and battery claims against the City will be dismissed based on immunity under the PSTCA. The negligence claims against Lally and McCullough shall also be dismissed because they are subject to immunity under the PSTCA.[11] See *Lopez v. Russel*, No. 25-7311, 2026 WL 2718066, at *5 (E.D. Pa. Sept. 14, 2026) (dismissing negligence claims against county employees because "the PSTCA effectively bars all negligence actions against counties and their employees, unless brought under one of the enumerated statutory exceptions" and no exception applied).

**B. Timeliness of Ivy's Claims**

The Moving Defendants argue that several of Ivy's claims arising from the February 23, 2018 arrest, including assault and battery, false arrest/false imprisonment, failure to intervene, and IIED, should be dismissed as untimely, in addition to some of these claims being barred by governmental immunity. The Pennsylvania statute of limitations for a personal injury action is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing 42 Pa. Cons. Stat. § 5524(2)). Thus, the statute of limitations applicable to Ivy's state law assault and battery and IIED claims is two years. The timeliness of a § 1983 claim is governed by the limitations period applicable to

---

3d 493, 502 n.9 (E.D. Pa. 2019) (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001)).

[11] To the extent Ivy asserts state law negligence claims against the Doe Officers, Pavel Reznick, and Danielle Outlaw, because these Defendants are also municipal employees entitled to immunity under the PSTCA, the negligence claims against them must also be dismissed.

personal injury actions of the state where the cause of action arose. *Id.* at 634 (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). Thus, the limitations period applicable to Ivy's § 1983 claims is also two years.

A statute of limitations generally begins to run when a cause of action accrues. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 146-47 (3d Cir. 2011). "[T]he accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period." *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007) (citing *Romero v. Allstate Corp.*, 404 F.3d 212, 221 (3d Cir. 2005)). The "standard rule" under federal law is that a claim accrues "when the plaintiff has a complete and present cause of action." *Gabelli v. SEC*, 568 U.S. 442, 448 (2013) (citation omitted); *see also A. Graham Co.*, 646 F.3d at 146-47. It is often the case, then, that a claim accrues – and the statute of limitations begins to run – when a violation or injury actually occurs. This is sometimes referred to as the "occurrence rule." *See G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 613 (3d Cir. 2015). However, pursuant to *Heck v. Humphrey*, a § 1983 cause of action that would impugn the validity of an underlying conviction or sentence does not accrue until the underlying criminal proceedings terminate in the plaintiff's favor. *Wright v. City of Philadelphia*, 229 F. Supp. 3d 322, 330 (E.D. Pa. 2017). Under Pennsylvania law, tort claims accrue on the date of the injury. *Cooper v. Sirota*, 37 F. App'x 46, 48 (3d Cir. 2002) (citing *Stroback v. Camaioni*, 674 A.2d 257, 262 (1996)); *see also Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) ("Generally speaking, in a suit to recover damages for personal injuries, this right arises when the injury is inflicted.").

With respect to Ivy's claims of assault and battery, failure to intervene, and IIED, the Court agrees that these claims are time-barred. There are no facts suggesting that Ivy did not have a "complete and present cause of action" for these claims immediately after the February

23, 2018 arrest from which they arise. Ivy did not file his Complaint until more than seven years after the arrest, more than five years past the statute of limitations. Nor is there any apparent basis for tolling here. And because success on these claims would not have impugned the validity of Ivy's 2019 guilty plea they are not subject to the deferred accrual rule from *Heck*. Accordingly, these claims will be dismissed as barred by the statute of limitations.[12]

However, the deferred accrual rule does apply to Ivy's Fourth Arrest false arrest/false imprisonment claims. Ivy asserts that he was arrested without probable cause based on planted evidence. While not all Fourth Amendment false arrest claims are subject to deferred accrual, at this stage of the litigation it appears that success on Ivy's false arrest claim would necessarily invalidate his resulting guilty plea to drug charges. *See, e.g.*, *Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004) (holding that false arrest claim based on allegations that police planted drugs on plaintiff "would necessarily challenge the legality of a prosecution premised on the planted drugs"); *see also Fields v. City of Pittsburgh*, 714 F. App'x 137, 140–41 (3d Cir. 2017) (affirming dismissal of false arrest claim as barred by *Heck* because "a finding that the officers lacked probable cause to arrest him . . . would directly "impugn[ ] the validity" of his resulting guilty plea." (quoting *Gilles v. Davis*, 427 F.3d 197, 208-09 (3d Cir. 2005)). Because Ivy's Fourth Amendment claims are subject to deferred accrual, the statute of limitations only began to

---

[12] The Moving Defendants additionally seek to dismiss any Eighth Amendment claims Ivy asserts based on these causes of action. The Court agrees that such claims should be dismissed, as failure to intervene claims based on a police officer's failure to prevent excessive force by another officer are properly analyzed under the Fourth Amendment, *see Morgan-Hicks v. N.J. Dep't of Corr.*, No. 17-655, 2020 WL 1983705, at *2 (D.N.J. Apr. 24, 2020) ("Failure to intervene claims brought by convicted prisoners for incidents occurring in prison are governed by the Eighth Amendment, whereas the Fourth Amendment governs claims brought by arrestees." (citations omitted)), and the other claims are state law tort causes of action that do not arise under the Eighth Amendment. Even if liberally construed as a Fourth Amendment excessive force claim, Ivy's "assault and battery" claim would nevertheless be time-barred.

run when his conviction was vacated on December 4, 2023. Thus, it is not apparent from the face of the Complaint that Ivy's Fourth Amendment claims, filed in 2025, are untimely.

**C. *Monell*/Municipal Liability Claims**

The Moving Defendants also seek to dismiss the *Monell*/municipal liability claims against the City. Local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 665-83 (1978). This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis in original). To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *Livingston v. Gallina*, No. 25-1948, 2025 WL 2673613, at *2 n.2 (3d Cir. Sept. 18, 2025) (*per curiam*) (quoting *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009)). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* "'[S]imply paraphras[ing]' the elements of a

*Monell* claim 'fails to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability.'" *Quinn-Winne v. Pennsylvania*, No. 20-2493, 2022 WL 767828, at *2 (E.D. Pa. Mar. 14, 2022) (quotation marks omitted) (quoting *Wood v. Williams,* 568 F. App'x 100, 104 (3d Cir. 2014) (affirming dismissal of *Monell* claim where complaint stating elements of cause of action were not sufficient to state a claim)).

The Moving Defendants argue that Ivy's municipal liability claims are not plausible because he does not identify any City policy, practice, or custom that led to his alleged constitutional injuries, nor does he allege any facts reflecting that the City failed to train or supervise the officers who purportedly violated his rights. The Court agrees. Rather than point to a City policy, practice, or custom that caused his injuries, Ivy appears to assert municipal liability based on the fact that the City employed officers who violated his rights. However, there is no *respondeat superior* liability under section 1983. *See Monell*, 436 U.S. at 691.

To the extent Ivy alleges municipal liability based on a failure to train theory, those claims are entirely undeveloped. "A municipality may . . . be liable under § 1983 for a failure to train its employees, if the failure to train amount[s] to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact . . . . Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) (quoting *Connick*, 563 U.S. at 61 (citations and internal quotation marks omitted)), *aff'd*, 756 F. App'x 165 (3d Cir. 2018). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," and that failure to train "actually causes injury," a city may be held liable. *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989). In addition,

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91. Ivy asserts that the City's "lack of supervision and not training defendant Lally and Defendant McCullough . . . led to [Ivy's] assault." (Compl. ¶ 123.) This bald statement is unsupported by any factual allegations suggesting the existence of an inadequate training policy or program whose deficiencies were apparent to the City, nor does Ivy allege facts indicating that any insufficient training led to Ivy's injury. Thus, Ivy's municipal liability claim against the City based on a failure to train theory is not plausible and will be dismissed.

Though not raised by the Moving Defendants, to the extent Ivy asserts a failure to train or supervise claim against Commissioner Outlaw in her individual capacity, that claim is not plausible for similar reasons. There are no allegations in the Complaint regarding Outlaw's involvement in any violation of Ivy's rights, nor any suggestion that she was aware of a deficiency in the training or supervision of PPD officers generally or of the defendant officers in particular. Absent such allegations, any supervisory liability claim against her is not plausible and will be dismissed. *See Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 431 (E.D. Pa. 2020) (dismissing failure to train claims against two supervisors because plaintiff "does not allege sufficient facts to establish that [the supervisors] acted with deliberate indifference or were personally involved in the alleged violations of his rights"), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023).

### D. Punitive Damages

The Moving Defendants seek to dismiss the punitive damages claims against the City, arguing that punitive damages against a municipal defendant are barred by law. The Court agrees. The Supreme Court has explicitly held that "a municipality is immune from punitive damages under 42 U.S.C. §1983." *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981); *see also Fletcher v. O'Donnell*, 867 F.2d 791, 795 (3d Cir. 1989) (finding that punitive damages may not be recovered against a city (citing *Newport*)). The Court will therefore dismiss the claims for punitive damages against the City.

### E. Additional Claims Against Lally and McCullough[13]

#### 1. Deliberate Deception

The Moving Defendants seek dismissal of Ivy's claim of deliberate deception against Defendants Lally and McCullough, arguing there is no allegation that the two officers were personally involved in any purported suppression of exculpatory evidence. A claim of deliberate deception derives from the Fourteenth Amendment due process right to a fair trial and requires that the plaintiff allege the defendants "'conceal[ed] and/or suppress[ed] relevant and material evidence as part of a larger scheme to deceive the court and frame [the plaintiff]." *Hicks v. City of Philadelphia*, 783 F. Supp. 3d 834, 854 (E.D. Pa. 2025) (quoting *Dennis v. City of Philadelphia*, 19 F.4th 279, 291 (3d Cir. 2021)); *see also Dennis*, 19 F.4th at 291 (explaining that "deliberate deception in violation of due process must go beyond the failure to disclose evidence and arises when imprisonment results from the *knowing* use of false testimony or other fabricated evidence or from concealing evidence to create false testimony to secure a conviction.").

[13] The Moving Defendants seek to dismiss many of the claims against Lally and McCullough on the first prong of the qualified immunity analysis. The first prong asks whether the underlying claims are plausible. Because the Court largely agrees with the Moving Defendants that Ivy fails to allege a plausible claim in most instances, it need not address the second prong, and indeed the qualified immunity analysis itself is arguably superfluous.

The Moving Defendants understand Ivy to base his deliberate deception claims on an allegation that the Defendants suppressed material and exculpatory evidence, specifically: 1) a bystander video of the arrest that contradicted the officers' account of the incident; and 2) misconduct reports regarding Defendants Reznick, Lally, and McCullough that Ivy could have used as impeachment evidence. (Moving Br. at 25-26.) While Ivy's Complaint is not a model of clarity, the Court disagrees somewhat with this reading. The Court understands Ivy to base his deliberate deception claim against Lally and McCullough on the allegation that the two officers "misled the Court by filing false police reports" and that they secured Ivy's conviction "with false information, false testimony, [and] perjured testimony."[14] (Compl. ¶¶ 113-14.)

The first part of Ivy's claim, which alleges that Lally and McCullough lied in their police report, does not by itself state a plausible claim absent allegations that doing so led to constitutional harm. *See Jarrett v. Township of Bensalem,* 312 F. App'x. 505, 507 (3d Cir. 2009) (explaining that "the filing of a false police report is not itself a constitutional violation."); *see also Bush v. City of Philadelphia,* No. 98-0994, 1999 WL 554585, *1 (E.D. Pa. July 16, 1999) (surveying cases and concluding that there is no constitutional right to a correct police report). Read liberally, however, Ivy claims that the false report filed by Lally and McCullough resulted in him being falsely charged with several crimes and ultimately wrongly held in custody for roughly five years. (*See, e.g.*, Compl. ¶ 105 (asserting that "Defendant Lally use[d] false reports and false testimony to secure charges against Plaintiff")). This plausibly alleges that Lally and McCullough's filing of the false police report led to a violation of his due process rights, which

[14] To the extent the Defendants are correct in construing Ivy as asserting a deliberate deception claim based on the suppression of an exculpatory bystander video and misconduct reports, the Court agrees that Ivy fails to plead that Lally and McCullough were personally involved in those actions.

is actionable under § 1983. *Cf. Bryant v. Pottsgrove Sch. Dist.*, No. 25-3140, 2026 WL 2099333, at *4 (E.D. Pa. July 21, 2026) (dismissing Fourteenth Amendment due process claim where the plaintiff "did not face wrongful arrest [and] was not charged" based on the filing of a false police report, but noting that a constitutional claim may well lie if "action is subsequently taken on the basis of a [false police] report" (quoting *Landrigan v. Warwick*, 628 F.2d 736, 744 (1st Cir. 1980)). This claim will therefore proceed.

Ivy alleges that Lally "testified and used perjured testimony" in an unspecified court proceeding, presumably providing an account of Ivy's arrest consistent with the police report. (*Id.* ¶ 60.) However, this claim may not proceed because "police officers who testify in criminal trials are protected by absolute witness immunity from suits under § 1983." *Simonton v. Ryland-Tanner*, 836 F. App'x 81, 84 (3d Cir. 2020); *see also Briscoe v. LaHue*, 460 U.S. 325, 343 (1983) ("Subjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties."). Witness immunity extends to "the pretrial stage of the judicial process." *Williams v. Hepting*, 844 F.2d 138, 141 (3d Cir. 1988). "Alleging false testimony, or alleging a conspiracy to submit false testimony, does not abrogate the absolute immunity witnesses enjoy." *Fry v. Rash*, No. 24-510, 2025 WL 834820, at *2 (D. Del. Mar. 17, 2025) (citing *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992)), *report and recommendation adopted*, 2025 WL 1043078 (D. Del. Apr. 8, 2025). Accordingly, any deliberate deception claim based on the officer's false in-court testimony is not plausible and will be dismissed.

Although not addressed by the Moving Defendants, Ivy also asserts his deliberate deception claim against "All Defendants," but there is no discernible allegation in the Complaint

that any Defendant other than Gordon, Lally, and McCullough was involved in deliberately suppressing exculpatory evidence in an effort to deceive the state court. As noted above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207. Because Ivy does not allege the personal involvement of Officer Reznick, the Doe Officers, Commissioner Outlaw, or the City in any acts of deliberate deception in the course of his prosecution, those claims will be dismissed.

### 2. Fabrication of Evidence Claims

Ivy asserts a claim for fabrication of evidence against Defendants Lally and McCullough under the Fourth and Fourteenth Amendments. The Moving Defendants do not seek outright dismissal of this claim. Rather, they argue that the claim is properly analyzed under the Fourteenth Amendment only, and that any Fourth Amendment claim based on fabrication of evidence should be dismissed. (Moving Br. 26-27.) The Court agrees. Fabrication of evidence claims arise under the Due Process Clause of the Fourteenth Amendment and derive from the right to a fair trial. *See Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) (noting that "every court of appeals that has considered the question" has analyzed fabrication of evidence claims under the Fourteenth Amendment due process clause rather than under the Fourth Amendment). The Court will therefore dismiss Ivy's Fourth Amendment fabrication of evidence claim, but his Fourteenth Amendment fabrication of evidence claim will proceed.

Ivy asserts his fabrication of evidence claim against the City. However, there is no allegation suggesting that Lally and McCullough engaged in fabrication of evidence pursuant to a City policy, custom, or practice. Thus, the fabrication of evidence claim against the City is not plausible and will be dismissed.

### 3. *Brady* Claims

The Moving Defendants seek to dismiss Ivy's *Brady* claims, arguing that such claims are barred as a matter of law and because in any event, Ivy does not allege the personal involvement of Defendants Lally and McCullough in the suppression of any *Brady* material. For the reasons discussed below, the Court agrees. To plead a *Brady* violation, the plaintiff must plausibly allege that "(1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the State suppressed the evidence, 'either willfully or inadvertently'; and (3) 'prejudice . . . ensued.'" *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The Moving Defendants contend that dismissal of these claims is warranted because Ivy's *Brady* claim is premised on the failure to turn over misconduct disclosures to him and his attorney, but he has "failed to plead [the] personal involvement of the individual Officers" including Lally and McCullough in that conduct. (Moving Br. at 27.) The Moving Defendants also cite *United States v. Ruiz*, 536 U.S. 622, 633 (2002), in which the United States Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." (Moving Br. at 28.) The state of the law in this area is less settled than Moving Defendants suggest, with several circuits recognizing an implicit distinction in *Ruiz* between material impeachment evidence and material exculpatory evidence. *See Alvarez v. City of Brownsville*, 904 F.3d 382, 392–94 (5th Cir. 2018) (noting that "[t]he First, Second, and Fourth Circuits . . . seem to have doubts about a defendant's constitutional entitlement to exculpatory *Brady* material before entering a guilty plea" while "[t]he Seventh, Ninth, and Tenth Circuits, however, recognized the possible distinction noted by the Supreme Court in *Ruiz* between impeachment and exculpatory evidence in the guilty plea context.")[15]

[15] To date, the Third Circuit has not addressed this question.

Read liberally, Ivy alleges that the *Brady* material suppressed in his case included both impeachment and exculpatory evidence,[16] thus arguably falling outside of the rule set forth in *Ruiz*.

However, the Court need not resolve that issue because, as the Moving Defendants note, there is no non-conclusory allegation in the Complaint that any individual officer was personally involved in the suppression of alleged *Brady* material. The *Brady* violation Ivy alleges involved the failure to turn over misconduct reports for Defendants Lally, McCullough, and Reznick. (*See* Compl. ¶¶ 97-104.) Ivy attributes this failure to Gordon, and possibly to "the Commonwealth." (*Id.* ¶ 97.) The only reference to Lally and McCullough's possible involvement in suppression of *Brady* evidence is vague and indirect. Ivy states that, "to cover up their excessive force Defendant Lally and Defendant McCullough conspired together to file [a] false incident report, investigation interview, police department investigation reports, and police department misconduct disclosure." (*Id.* ¶ 106.) This vague comment fails to identify any specific *Brady* material at issue beyond a vague reference to "police department misconduct disclosure" or to specifically allege that either officer was personally involved in suppressing the material. *See, e.g.*, *Wagner v. City of Philadelphia*, No. 25-1450, 2026 WL 789450, at *10 (E.D. Pa. Mar. 20, 2026) (dismissing *Brady* and other claims against police officer where plaintiff did not allege facts to support those claims); *see also Palmore v. Clarion Univ. of Pennsylvania*, No. 21-0106, 2025 WL 1882837, at *12 (W.D. Pa. July 8, 2025) ("Even if Palmore stated a valid *Brady* due process claim, he has failed to state such a claim against President Whitney for the separate

[16] Though somewhat unclear, Ivy appears to refer to the report on Lally and McCullough's conduct during the February 23, 2018 arrest, which cited apparent discrepancies between the officers' account of the incident compared to the video and testimony of witness Jose Santos. (*See* Compl. ¶¶ 102-03 (noting that Ivy "would have used this evidence to discredit the defendant's version of events)); (*see also id.* at 13-15.).

reason that he alleged no facts from which it can be reasonably inferred that she was personally involved in violating his due process rights.”). Thus, even if the Court took the view that suppression of *Brady* material prior to a guilty plea could set forth a constitutional violation, any such claim against Lally and McCullough is not plausible and will be dismissed.[17]

**4. Malicious Prosecution Claims**

Next, Moving Defendants argue that the Fourteenth Amendment malicious prosecution claims against Defendants Lally and McCullough should be dismissed based on qualified immunity. As they note, the Fourteenth Amendment right to be free from malicious prosecution is not clearly established. (Moving Br. at 28) (citing *Hicks v. City of Philadelphia,* 783 F. Supp. 3d 834, 850 (E.D. Pa. 2025)); *see also Alicea v. City of Philadelphia*, No. 22-3437, 2022 WL 17477143, at *4 (E.D. Pa. Dec. 6, 2022) (“It is unclear whether a right to be free from malicious prosecution exists under the Due Process Clause of the Fourteenth Amendment . . . Given that the law remains unsettled to this day, [that right] could not have been ‘clearly established’ at the time of the individual Defendants’ conduct.”) The Court will therefore grant the Motion as to the Fourteenth Amendment malicious prosecution claim, which will be dismissed. The Moving

[17] For the same reasons, any *Brady* claim against the other individual Defendants, including Defendants Reznick, Outlaw, and the Doe Defendants is not plausible because there is no allegation that they were personally involved in the alleged suppression of evidence. Any *Monell* claim against the City is also not plausible because there is no allegation that a City employee suppressed *Brady* evidence pursuant to a City policy, custom, or practice. *See Thorn v. New Castle Cnty.*, No. 21-1024, 2022 WL 2828837, at *3 (D. Del. July 20, 2022) (recommending dismissal of *Monell* claim where plaintiff’s “allegations do not plausibly suggest that New Castle County has a policy or custom that led to the Fourth Amendment violations alleged”), *report and recommendation adopted*, 2022 WL 23026365 (D. Del. Sept. 7, 2022).

Defendants do not, however, challenge Ivy's Fourth Amendment malicious prosecution claim, which will proceed as to Lally and McCullough.[18]

**5. Malicious Abuse of Process Claims**

Moving Defendants seek dismissal of Ivy's Malicious Abuse of Process claims, arguing that they are barred as a matter of law. They assert that these claims should be dismissed because they are incompatible with Ivy's allegation that he was arrested without probable cause and that his prosecution was illegitimate from the start. "In contrast to a section 1983 claim for malicious prosecution, a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (internal citations omitted) (emphasis added). Here, as the Moving Defendants point out, Ivy alleges that his criminal prosecution was not initiated legitimately; he asserts that the officers initiated the prosecution by framing him for drug possession, lying about what happened during the February 23 traffic stop, and arresting him without probable cause. (Moving Br. at 29.) The Court agrees that these allegations articulate a claim for malicious prosecution rather than malicious abuse of process. Because Ivy's allegations are inconsistent with a claim of abuse of process, the Court will dismiss the claim as to all Defendants. *See*, *e.g.*, *Napier v. City of New Castle*, 407 F. App'x 578, 582 (3d Cir. 2010) (affirming dismissal of abuse of process claim where plaintiff alleged that police officers arrested and filed criminal charges against her for improper purpose, because such actions "would constitute malicious prosecution, not abuse of process."); *see also Boldrini*

---

[18] Again, there is no allegation suggesting that any Defendant other than Gordon, Lally, and McCullough was personally involved in instituting criminal charges against Ivy without probable cause. Thus, any malicious prosecution claim Ivy asserts against the remaining Defendants will be dismissed.

*v. Wilson*, 542 F. App'x 152, 154 n.1 (3d Cir. 2013) (*per curiam*) (affirming district court's denial of a motion to amend after the dismissal of a malicious prosecution claim, explaining that the plaintiff "claimed that the criminal action was improper from the start, which constitutes malicious prosecution" rather than abuse of process).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss Ivy's Complaint. Specifically, the Court will dismiss the following claims *with prejudice*: (1) all state law claims; (2) the claims for punitive damages against the City; (3) the Fourth Amendment fabrication of evidence claims; (4) the malicious of abuse of process claims; and (5) the Fourteenth Amendment malicious prosecution claims. The following claims will be dismissed *without prejudice*: (1) the *Monell* claims against the City; (2) the failure to supervise claims against Defendant Outlaw; (3) the *Brady* claims against Lally and McCullough; and (4) the deliberate deception claims against Outlaw, Reznick, and the Doe Defendants. The following claims against Lally and McCullough will proceed to discovery: (1) the Fourth Amendment false arrest claims; (2) the Fourteenth Amendment fabrication of evidence claims; (3) the Fourteenth Amendment deliberate deception claims; and (4) the Fourth Amendment malicious prosecution claims. An appropriate Order follows, directing Defendants Lally and McCullough to respond to the remaining claims in this case.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**